IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PHILIP L. PROCTOR ,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ATLANTA,<br><br>Defendant. | Civil Action<br>File No. |

**COMPLAINT**

Plaintiff, Philip L. Proctor ("Plaintiff" or "Proctor"), by and through his counsel of record, Jean Simonoff Marx of Marx & Marx, L.L.C., as and for his Complaint, respectfully alleges as follows:

INTRODUCTION

1.

This is an action under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 *et seq*., as amended ("ADEA") to correct unlawful employment practices on the basis of age and to provide appropriate relief to Philip L. Proctor

who was adversely affected by such practices. Mr. Proctor will be amending this Complaint following receipt of a Right to Sue letter regarding his action under Title I of the Americans with Disabilities Act, 42 U.S.C. §§12101 *et seq*. ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA) to correct unlawful employment practices on the basis of disability or perceived disability and to provide appropriate relief to Mr. Proctor under that statute. Mr. Proctor alleges that Defendant City of Atlanta ("Defendant" or "City of Atlanta") discriminated against him on the basis of his age and/or disability or perceived disability when it failed to promote him to the position of Chief Building Inspector, also known as Chief Combination Inspector ("CCI") in or about November 2020, and then failed to hire him into that position in or about December 2021, after Defendant first posted the position in the Spring of 2021. Mr. Proctor seeks declaratory, injunctive and equitable relief, and money damages for redress of rights secured to him by 29 U.S.C. §§621 *et seq*. ("ADEA"), and in addition to the aforesaid relief, will be seeking compensatory damages for mental anguish under the ADA as amended by the ADAAA. Plaintiff also seeks an award of attorneys' fees and costs, pursuant to 42 U.S.C. §1988.

## PARTIES

2.

Plaintiff, Philip L. Proctor is a male natural person residing over the age of 40 residing in Fulton County in the Northern District of Georgia. Mr. Proctor was born in 1960.

3.

Defendant, City of Atlanta, is a municipality (municipal corporation) within the meaning of O.C.G.A. §36-30-1 created by and under the laws of the State of Georgia. City of Atlanta is subject to the jurisdiction of this Court and may be served with process through Mayor Andre Dickens at the Executive Office of the City of Atlanta, 55 Trinity Avenue, Suite #1920, Atlanta, Georgia 30303.

4.

At all relevant times, Defendant has conducted business in the State of Georgia and has continuously maintained at least 20 employees.

5.

At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

## JURISDICTION AND VENUE

6.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1337 and 1343. This action is authorized and instituted pursuant to Section 7(b), §626(b) of the ADEA, which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 as amended, 29 U.S.C. §§216(c) and 217 ("FLSA").

7.

Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendant City of Atlanta conducts business in this district and division and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

## ADMINISTRATIVE PROCEDURES

8.

On November 19, 2020 Mr. Proctor, who was about to turn 60 at the end of December 2020, and had recently battled pancreatic cancer during 2019 and 2020, was passed over for promotion to the Chief Building Inspector position, also known as Chief Combination Inspector ("CCI"), upon the vacancy in that position by the then current and outgoing CCI, Steve Johnson. At that time, Mr. Proctor

was in the position of Combination Inspector Principal, which position reported to the CCI. Mr. Johnson told Larry Bryant, a similarly situated Combination Inspector Principal and peer of Mr. Proctor, that he (Mr. Johnson) had recommended that his replacement as CCI be Tim Rehklau because Mr. Rehklau is "younger" and "has a much longer career" than either Mr. Proctor or Mr. Bryant. On information and belief, on or about November 19, 2020, Defendant promoted Mr. Rehklau to the CCI position. On November 19, 2020 Gregory Pace, Director of the City of Atlanta Buildings Department, told Mr. Bryant that he had relied on Steven Johnson's recommendation of Mr. Rehklau for the promotion to CCI.

9.

After having been passed over for promotion to CCI, Mr. Proctor retired at the end of 2020, effective as of the beginning of January 2021.

10.

Within 180 days of the foregoing, on February 11, 2021, Mr. Proctor filed his Charge of Discrimination with the EEOC alleging age and disability discrimination based on his failure to be promoted to CCI.

11.

On information and belief, when Mr. Rehklau was promoted to CCI on or about November 19, 2020, that promotion was never denominated as interim, and the position had never been posted. On information and belief, after Mr. Proctor filed his EEOC Charge on February 11, 2021, based on age and disability discrimination, and Mr. Bryant had also filed his EEOC Charge on that same date against Defendant based on age discrimination, both EEOC Charges regarding Mr. Rehklau's promotion to CCI, Defendant for the first time characterized Mr. Rehklau's selection for CCI as "interim." On information and belief, Defendant also thereafter, for the first time, "posted" the CCI position on or about April 16, 2021.

12.

Mr. Proctor timely filed an application to be hired into the belatedly "posted" position of "permanent" CCI.

13.

On information and belief, on or about December 14, 2021, Defendant "promoted" Mr. Rehklau to the "permanent" CCI position, over more qualified older applicants, including Mr. Proctor.

14.

Mr. Proctor filed a second, Amended EEOC Charge, on February 24, 2022 alleging age and disability discrimination based on failure to promote [November 19, 2020 promotion of Mr. Rehklau instead of Mr. Proctor as "interim" CCI], and also based on failure to hire [December 14, 2021 "hiring" of Mr. Rehklau as "permanent" CCI instead of hiring Mr. Proctor].

15.

On July 8, 2022 the EEOC issued to Mr. Proctor and to City of Atlanta a Letter of Determination finding reasonable cause to believe that the ADEA and ADA had been violated with respect to Mr. Proctor's failure to promote and failure to hire charges related to the selection of Mr. Rehklau as Chief Building Inspector (CCI), and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

16.

On January 13, 2023 the EEOC issued a Notice of Failure of Conciliation advising the parties that the EEOC was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

17.

The EEOC has not issued a Right to Sue letter in this case.

18.

More than 60 days have elapsed since Mr. Proctor filed his first EEOC Charge on February 11, 2021, and since he filed his second (Amended) EEOC Charge on February 24, 2022.

19.

All conditions precedent to the institution of this lawsuit under the ADEA have been fulfilled. Mr. Proctor will timely amend this Complaint to add his claims under the ADA after receipt of a Right to Sue letter.

## FACTS

20.

City of Atlanta is a municipality with the capacity to sue and be sued.

21.

City of Atlanta is a Charter City under the laws of the State of Georgia.

22.

The Department of City Planning is one of several departments within in the City of Atlanta, whose functions include, urban design, plan review and permitting,

code compliance, community and economic development and housing and environmental policy.

23.

The Office of Buildings is within the Department of City Planning, and authorizes activities such as construction, tree removal, sign placement, and technical work through the issuance of building permits. The Office of Buildings ("Buildings Department") also conducts inspections and building code enforcement.

24.

At all relevant times Gregory Pace has been Director of the Office of Buildings and is the highest level decisionmaker in the Buildings Department.

25.

Within the Buildings Department "Senior Staff" denominated on City of Atlanta's website, https://www.atlantaga.gov/government/departments/city-planning/about-dcp/office-of-buildings, includes the Chief Building Inspector or CCI., who along with other senior staff, reports directly to Mr. Pace, as Director of the Office of Buildings. As noted in Paragraph 1 above, Chief Building Inspector (CCI) is also known as Chief Combination Inspector.

26.

On information and belief, Steve Johnson was Chief Building Inspector (CCI) from in or about 2017 or 2018 until announcing his retirement on or about November 12, 2020, effective November 25, 2020.

27.

The Combination Inspector Principal position held by Mr. Proctor and Mr. Bryant was second in command to and reported directly to Mr. Johnson as Chief Building Inspector (CCI).

28.

Field inspectors were managed by and reported to Combination Inspector Principals.

29.

On information and belief, promotion to the Chief Building Inspector (CCI) position should have been from the Combination Inspector Principal position. On information and belief, City of Atlanta was required to promote from Combination Inspector Principal to CCI pursuant to an inspector's incentive program that had been approved by the Atlanta City Council regarding existing employees. On information and belief, this promotion path was not discretionary, and City of

Atlanta's selection of Mr. Rehklau who was subordinate to both Mr. Proctor and Mr. Bryant (to whom Mr. Rehklau in fact reported as field inspector) was in derogation of Defendant's own policies and requirements.

30.

Mr. Proctor initially started working for the City of Atlanta Buildings Department in 1998 as a Plumbing Inspector. Mr. Proctor was laid off as part of a large lay off in 2008, after he had been there for 9 years and 9 months. He was rehired by City of Atlanta in 2000 as Supervisor of Code Enforcement in the City of Atlanta Buildings Department. Over his more than 20 year tenure working for the City of Atlanta Buildings Department, Mr. Proctor received several promotions, ultimately holding the title Combination Inspector Principal since in or about 2014. As noted above, as Combination Inspector Principal, Mr. Proctor was second in command and reported directly to the CCI, who was Steve Johnson from in or about 2017 until Mr. Johnson retired effective November 25, 2020.

31.

In the Combination Inspector Principal position since in or about 2014, Mr. Proctor supervised some 12 – 15 field inspectors who were subordinate to him, ultimately covering the Southeast and Southwest quadrants, or half of Atlanta at

the time he was passed over for promotion to CCI in November 2020. Mr. Proctor's supervisory responsibilities over the field inspectors included managing their time, monitoring their inspection activities, training them, evaluating their performance, and making recommendations as to whether any of the building inspectors could be considered for promotion to a supervisory role.

32.

As Combination Inspector Principal, Mr. Proctor was a master plumber and held some 19 certifications, including the Certified Building Official certification, which is one of the highest certifications in the Building Department. The Certified Building Official certification enables the holder to run any Building Department in the country.

33.

During Mr. Proctor's tenure, the requirements for a manager position, as opposed to a field inspector position, included having at least 6 certifications which required having all of the residential certifications and at least two commercial certifications, and prior building department management experience.

34.

Larry Bryant was another Combination Inspector Principal in November 2020 when Mr. Rehklau was chosen by Steve Johnson to replace him as CCI. Mr. Bryant was born in 1961, and at the time of Mr. Rehklau's selection was Mr. Rehklau's direct supervisor, and was 59 years old when Mr. Rehklau was chosen instead of him to be CCI. Mr. Bryant had worked for City of Atlanta for approximately 16 years at the time of Mr. Rehklau's promotion over him, and had been Mr. Rehklau's direct supervisor for the last 4 years until Mr. Rehklau was promoted to CCI instead of either Mr. Proctor or Mr. Bryant.

35.

Mr. Rehklau had started working for the City of Atlanta Office of Buildings under Mr. Bryant's direct supervision in or about 2017. Mr. Bryant supervised Mr. Rehklau for 4 years, during the entirety of Mr. Rehklau's tenure, in the Office of Buildings until Mr. Rehklau was promoted over Mr. Proctor (and Mr. Bryant) into the position of CCI in November 2020 at Mr. Johnson's recommendation.

36.

On information and belief, Mr. Rehklau is approximately 5 years younger than Mr. Proctor and approximately 4 years younger than Mr. Bryant.

37.

Mr. Proctor and Mr. Bryant had been training and mentoring Mr. Rehklau to move into a supervisory position. On information and belief, under Mr. Bryant's direct supervision, Mr. Rehklau lacked several required certifications for a manager position including electrical or combination inspector certifications. On information and belief Mr. Rehklau had no life safety training, had no fire marshal training (which is uniquely required in City of Atlanta to be conducted by the Office of Buildings), and had no experience in commercial building inspection. On information and belief, Mr. Rehklau's prior "management" experience had been managing people in a family owned business, and he had had no governmental management experience in any government. On information and belief, Mr. Bryant was training Mr. Rehklau for the Combination Inspector position (which was subordinate to Combination Inspector Principal, the position held by both Mr. Proctor and Mr. Bryant). On information and belief, Mr. Rehklau did not have a Certified Building Official Certification.

38.

During the period October 2019 – October 2020 Mr. Proctor battled cancer, which Mr. Johnson and Mr. Pace knew.

39.

On or about November 12, 2020, Steve Johnson, the then current Chief Building Inspector (CCI) announced that he would be retiring and vacating the CCI position as of November 25, 2020.

40.

Mr. Proctor was fully qualified for the position of Chief Building Inspector (CCI) and would have been in the natural line of consideration for that position based upon his supervisory experience, training, tenure and skill sets necessary for that position. With his Certified Building Official ("CBO") certification, Mr. Proctor was not only qualified to be Chief Building Inspector (CCI), but indeed was certified to run the whole Building Department.

41.

On repeated occasions Mr. Proctor had communicated his interest and desire in being promoted to the Chief Building Inspector (CCI) position.

42.

On information and belief, Mr. Proctor was not even considered for the position of Chief Building Inspector (CCI) being vacated by Steve Johnson because of his age and because he had had cancer.

43.

The Chief Building Inspector (CCI) position which was to be filled upon Steve Johnson's departure was not posted.

44.

Steve Johnson, the outgoing CCI, told Mr. Bryant that he had recommended Mr. Rehklau for the CCI position because Mr. Rehklau is younger than either Mr. Bryant or Mr. Proctor.

45.

Mr. Rehklau is substantially younger than Mr. Proctor, was not qualified, and was a field inspector, a position subordinate to Mr. Proctor's position as a Combination Inspector Principal. When he was promoted over Mr. Proctor, Mr. Rehklau was still in training since 2017 to become a manager.

46.

Mr. Johnson directly told Mr. Bryant that he had recommended Mr. Rehklau for the CCI position over both him and Philip Proctor, because Mr. Rehklau "is younger" and "has a much longer career" ahead of him than "we do", referring to himself, to Mr. Bryant and to Mr. Proctor.

47.

Mr. Johnson similarly told Eric Woods, another Buildings Department employee who was then 70, referring to the CCI position: "We're giving it to someone younger."

48.

Mr. Pace directly stated to Mr. Bryant on November 19, 2020 that he had relied on Mr. Johnson's recommendation of Mr. Rehklau for the CCI position.

49.

The City of Atlanta's current website confirms that Mr. Rehklau was promoted to CCI based on Mr. Johnson's recommendation. City of Atlanta's website states *inter alia* "Tim was selected by the previous Chief to assume the role as Interim Chief, upon his retirement."

50.

On information and belief, Mr. Pace relied upon Steve Johnson's recommendation to put someone younger in the CCI position. On information and belief, Mr. Pace recommended to Tim Keane, Commissioner of the Department of City Planning which oversees Atlanta's Buildings Department, that Mr. Rehklau be promoted to the position of CCI. On information and belief, Mr. Keane relied

upon Mr. Pace's recommendation in deciding to promote Mr. Rehklau to the position of CCI.

51.

At the time of the recommendation by Mr. Johnson of Mr. Rehklau as CCI, Mr. Proctor had over 20 years in City of Atlanta's building department, and over 10 years as a supervisor, whereas Mr. Mr. Rehklau was a field inspector, subordinate to Mr. Proctor and to Mr. Bryant, lacked required certifications, held no supervisory role, and had had no supervisory experience with City of Atlanta.

52.

The City of Atlanta's illegal consideration and reliance upon age as a criterion for making personnel/employment decisions within the Building Department is well known and has been reiterated numerous times during supervisor meetings.

53.

Accordingly, on repeated occasions during his tenure as CCI, Mr. Johnson stated that "younger people are going to take over", and "we're all on our way out anyway." Prior to recommending Mr. Rehklau to replace him as CCI, Mr. Johnson

had repeated these statements that he had made repeatedly, most recently in or about March/April of 2020.

54.

On or about November 19, 2020 when Mr. Rehklau was chosen to be Chief Building Inspector over Mr. Proctor who was his superior, Mr. Proctor sent an email announcing that he would be retiring effective January 2021. Mr. Pace responded with an email corroborating Defendant's awareness of Mr. Proctor's disability, stating: "I pray that your health continues to improve so that you can remain the pillar in your family and community that you are."

55.

Cancer is disability within the meaning of the ADA and ADAAA.

56.

Mr. Proctor was perceived as being disabled within the meaning of the ADA and ADAAA.

57.

On information and belief, Mr. Proctor's age, combined with his cancer diagnosis and battle, created in Defendant's eyes an erroneous stereotyped perception of him as an old sick guy.

58.

On or about December 31, 2020 effective early-January 2021, Mr. Proctor retired from City of Atlanta.

59.

Mr. Proctor filed a Charge of Discrimination with the EEOC against City of Atlanta on February 11, 2021, alleging the foregoing facts and charging City of Atlanta with illegal discrimination under the ADEA and the ADA.

60.

In November 2020 when Steve Johnson unambiguously stated that City of Atlanta was filling the CCI position with a younger man, there was no mention or statement that the position was being filled on an interim basis. To the contrary, Mr. Johnson stated that Mr. Rehklau was being made the new CCI, which position Mr. Rehklau filled upon Mr. Johnson's departure in or about the end of November 2020.

61.

The characterization of Mr. Rehklau's selection for the CCI position as "interim", only occurred after the City of Atlanta received notice that Mr. Bryant and Mr. Proctor had filed EEOC Charges in February 2021 alleging *inter alia*

discrimination on the basis of age (and disability for Mr. Proctor) regarding their failure to be promoted to Chief Building Inspector (CCI).

62.

City of Atlanta first "posted" the Chief Building Inspector position on or about April 16, 2021.

63.

City of Atlanta's alleged "posting" of the Chief Building Inspector (CCI) position 5 months after Mr. Rehklau had been put into that position, and following the filing of Mr. Bryant and Mr. Proctor's EEOC age discrimination charges, was a sham. City of Atlanta "posted" the position for CCI in April 2021, *after* Mr. Bryant and Mr. Proctor had expressed interest in the CCI position being vacated by Steve Johnson, *after* they had already been told that the City of Atlanta would be hiring Mr. Rehklau for the Chief Building Inspector (CCI) position because he was younger, after Mr. Proctor had retired, after Mr. Bryant had announced his intent to retire, and after both he and Mr. Bryant had *filed their EEOC charges*. On November 19, 2020 when Mr. Johnson told Mr. Bryant that Mr. Rehklau was being promoted to fill the CCI position because he was younger, Mr. Johnson did not tell Mr. Bryant that the position was "interim", or make known any application

process for that alleged "interim" position. There was no application process. Mr. Rehklau did not apply at the time that he replaced Mr. Johnson and in fact told Mr. Bryant that he (Mr. Rehklau) had been *surprised* when he was contacted for the position.

64.

Though he had retired from City of Atlanta, Mr. Proctor formally applied for the now posted Chief Building Inspector (CCI) position in April 2021, as soon as he saw it was posted.

65.

City of Atlanta ostensibly conducted interviews for the now posted position Chief Building Inspector position (CCI) in October 2021.

66.

Mr. Proctor went for an interview for the Chief Building Inspector (CCI) position in or about October 2021.

67.

Mr. Proctor received a letter on December 14, 2021 from City of Atlanta telling him that he was not selected for the Chief Building Inspector (CCI) position.

68.

On information and belief, Mr. Rehklau was "hired" as "permanent" in the position of Chief Building Inspector (CCI) on December 14, 2021.

69.

In addition to Mr. Johnson's clear statements to Mr. Bryant and Mr. Woods that Mr. Rehklau was selected as his replacement as Chief Building Inspector because Mr. Rehklau was younger and had a longer career ahead of him, Mr. Johnson repeatedly made comments in staff and training meetings that "old guys would be gone" and that the City was looking for "young people" to fill positions.

70.

On February 24, 2022 Mr. Proctor amended his EEOC Charge to allege age and disability discrimination in hiring as well as age and disability discrimination regarding failure to promote, after it had been announced that Mr. Rehklau had been made permanent in the Chief Building Inspector (CCI) position he had been chosen to fill a year before.

71.

The EEOC investigated Mr. Bryant's and Mr. Proctor's EEOC charges that raised *inter alia* claims of age discrimination (and ADA claims for Mr. Proctor)

regarding failure to promote and in hiring with respect to Mr. Rehklau's selection for the Chief Building Inspector (CCI) position.

72.

On July 8, 2022 the EEOC issued its determination of Probable Cause regarding Mr. Proctor's age and disability discrimination charges related to promotion and hiring regarding the Chief Building Inspector position filled by Mr. Rehklau. Accordingly, the EEOC wrote:

> The evidence revealed that Respondent hired Charging Party in or around 1998 as a Plumbing Inspector. In or around June 2014, after several promotions over his 22-year tenure, Charging Party held the job title of Combination Inspector, Principal, a high-level supervisory role, in which he was second in command to the CCI. On or about November 12, 2020, the CCI submitted his intent to retire and vacate the position on November 25, 2020. Charging Party had expressed his interest in being promoted to the CCI position and was qualified for the position. On or about November 19, 2020, Respondent offered the position to another employee who was younger than and subordinate to Charging Party. The former CCI made statements to Charging Party and to other witnesses that the younger employee was promoted because of his age. On or about November 19, 2020, Charging Party submitted his intent to retire on January 6, 2021. Charging Party received an email from the Director expressing his sadness to see Charging Party leave and stating, "I pray that your health continues to improve so that you can remain the pillar in your family and community that you are." Respondent

> was aware that Charging Party had a disability. On or about February 11, 2021, Charging Party filed a charge of discrimination. On or about April 16, 2021, Respondent posted the CCI position for applications. Charging Party applied for the CCI position and was interviewed in or around October 2021. Respondent notified Charging Party in or around December 2021, that he was not selected for the CCI position. Respondent ultimately hired the younger employee on a permanent basis in or around December 2021. Respondent's proffered non-discriminatory reasons for not promoting and/or hiring Charging Party does not withstand scrutiny and is pretext for unlawful age discrimination and unlawful disability discrimination.
>
> Based upon the evidence and the record as a whole, there is reasonable cause to conclude that Charging Party was not promoted or hired because of his age in violation of the ADEA, and because he is a person with an actual or perceived disability, in violation of the ADA.

73.

But for City of Atlanta's illegal age and/or disability discrimination in the selection of Mr. Rehklau, Mr. Proctor's younger subordinate, as interim and then permanent Chief Building Inspector to whom now Mr. Proctor would report, Mr. Proctor would have worked at City of Atlanta until at least age 67.

74.

As a direct and proximate result of Defendant's unlawful conduct, Mr. Proctor has suffered actual damages, including but not limited to back pay, front pay, losses in compensation and benefits, humiliation, emotional distress, and loss of enjoyment of life. As just one example, Mr. Proctor suffers diminished retirement benefits for life as a result of City of Atlanta's illegal age discrimination. City of Atlanta's lifetime retirement benefit is calculated by reference to an employee's last three years' salary, which would have been substantially higher had Mr. Proctor retired from the position of Chief Building Inspector (CCI) rather than Combination Inspector Principal. In addition, City of Atlanta's retirement benefit is calculated as a percentage of the last three years' salary, which percentage increases with every year of employment. Accordingly, had Mr. Proctor been selected for Chief Building Inspector (CCI) his pension for life would be calculated at a higher percentage of a higher salary.

75.

City of Atlanta is aware that age discrimination and disability discrimination are illegal under the ADEA and ADA respectively. City of Atlanta's website contains numerous documents reflecting that age and disability discrimination are

illegal including reference to various kinds of discrimination, including age and disability "and the EEOC", and "City of Atlanta Human Relations Complaint Form" lists age and disability among several kinds of illegal discrimination.

76.

City of Atlanta's selection of Mr. Rehklau over Mr. Proctor for Chief Building Inspector (CCI) because Mr. Rehklau was "younger" and "had a longer career ahead of him" constitutes a willful violation under the ADEA because City of Atlanta knew or at the least showed reckless disregard for the matter of whether Mr. Rehklau's selection because of his being younger than Mr. Proctor (or Mr. Bryant), was prohibited by the ADEA. Accordingly, the unlawful employment practices complained of above were done with malice and/or with reckless indifference to Mr. Proctor's federally protected rights, thereby constituting a willful violation of the ADEA. Such willful violation entitles Mr. Proctor to liquidated damages.

FIRST CAUSE OF ACTION
AGE DISCRIMINATION
FAILURE TO PROMOTE
(29 U.S.C. §§621 *et seq*. ("ADEA"))

77.

Mr. Proctor realleges ¶¶1-76 with the same force and effect as if set forth fully herein.

78.

In particular, Mr. Proctor realleges the allegations contained in (¶¶2-5) regarding the parties, (¶¶6-7) regarding jurisdiction and venue, (¶1) regarding nature of the action, and (¶¶ 8-19) regarding administrative proceedings and satisfaction of conditions precedent.

79.

In particular, Mr. Proctor realleges (¶¶2,8) which set forth that Mr. Proctor was born in 1960 and therefore over the age of 40 at the time he was passed over for promotion to Chief Building Inspector (CCI) in November 2020. Accordingly, Mr. Bryant is in the protected class under the ADEA.

80.

Mr. Proctor realleges (¶¶ 27-35, 37, 40, 45, 51) establishing that he was qualified to be promoted to Chief Building Inspector. Mr. Proctor had the required

certifications, in fact more certifications and for longer periods of time than Mr. Rehklau, along with years of supervisory experience whereas Mr. Rehklau was supervised and being trained by Mr. Proctor's peer, Mr. Bryant, to become a supervisor.

81.

Mr. Proctor realleges (¶¶1,2, 8-15, 26-73, 75, 76) establishing that Mr. Rehklau was illegally promoted over him because of Mr. Rehklau's younger age.

82.

Mr. Rehklau is sufficiently younger than Mr. Proctor to create an inference of age discrimination. (¶¶ 36, 45).

83.

In any event, Mr. Johnson's statements amount to direct evidence of age discrimination. Accordingly, Mr. Proctor realleges (¶¶8, 44, 46, 47, 48, 49, 50) establishing that Steve Johnson, whose recommendation Gregory Pace and City of Atlanta followed regarding the selection of his successor as Chief Building Inspector, specifically stated regarding the selection of Mr. Rehklau over Mr. Bryant or Mr. Proctor, that the decision was made because Mr. Rehklau was "younger" and "had a longer career ahead of him". (¶¶ 44, 46). Mr. Johnson told

Eric Woods, who was 70, that they had selected someone "younger" for the Chief Building Inspector position. (¶47) Mr. Johnson's direct statements of ageist bias regarding the selection of Mr. Rehklau in November 2020 were consistent with his repeated prior statements in staff and training meetings that "old guys would be gone" and that the City was looking for "young people" to fill positions. (¶¶ 52, 53, 69). In any event, Mr. Johnson's ageist statements directly stating the intent to hire someone "younger" with a "longer career ahead of him" with specific reference to the Chief Building Inspector (CCI) position establishes the causal connection between Mr. Rehklau's younger age and his selection to succeed Mr. Johnson as Chief Building Inspector (CCI).

84.

Mr. Pace confirmed that he had merely gone along with Mr. Johnson's recommendation, which in any event is confirmed by City of Atlanta's own website which states that "Tim was selected by the previous Chief to assume the role as Interim Chief, upon his retirement." Thus, City of Atlanta's own website confirms that Steve Johnson effectively made the decision, which Mr. Pace and City of Atlanta went along with, regarding the promotion of Mr. Rehklau. (¶¶48-50).

85.

Mr. Johnson's ageist intent can be imputed to City of Atlanta because Mr. Pace simply rubber-stamped Mr. Johnson's recommendation, which is borne out by City of Atlanta's public statements on its own website. (¶¶48-50).

86.

Mr. Proctor realleges (¶¶ 71-72) establishing that after its investigation the EEOC concluded that City of Atlanta had violated the ADEA regarding the promotion of Mr. Rehklau over Mr. Bryant, and that City of Atlanta's articulation for doing so was pretextual.

87.

City of Atlanta's decision to promote Mr. Rehklau instead of Mr. Proctor was based on age and violated the ADEA. (¶¶ 1,2, 8-15, 24-73, 75, 76). Any reasons articulated by City of Atlanta for doing so are pretextual, as so found by the EEOC.

88.

The effect of the practices complained of above have deprived Mr. Proctor of equal employment opportunities and have otherwise adversely affected his status as an employee because of his age.

89.

The unlawful employment practices complained of above were intentional.

90.

Mr. Proctor realleges (¶¶ 73-74) regarding damages he has suffered.

91.

Mr. Proctor realleges (¶¶ 75-76) establishing that City of Atlanta committed a willful violation of the ADEA entitling Mr. Bryant to liquidated damages.

SECOND CAUSE OF ACTION
AGE DISCRIMINATION
FAILURE TO HIRE
(29 U.S.C. §§621 *et seq*. ("ADEA"))

92.

Mr. Proctor realleges ¶¶1-76 with the same force and effect as if set forth fully herein.

93.

In particular, Mr. Proctor realleges the allegations contained in (¶¶2-5) regarding the parties, (¶¶6-7) regarding jurisdiction and venue, (¶1) regarding nature of the action, and (¶¶ 8-19) regarding administrative proceedings and satisfaction of conditions precedent.

94.

In particular, Mr. Proctor realleges (¶¶2,8) which set forth that Mr. Proctor was born in 1960 and therefore over the age of 40 at the time he was not hired in December 2021 into the position of Chief Building Inspector, after City of Atlanta belatedly posted that position following his and Mr. Bryant's filing EEOC charges alleging age discrimination regarding the failure to promote them respectively to Chief Building Inspector in November/December 2020 (¶¶60-68).

95.

Mr. Proctor realleges (¶¶ 41, 64, 66) establishing that he had repeatedly communicated his interest in becoming Chief Building Inspector.

96.

Mr. Proctor realleges (¶¶ 29-35, 37, 40, 45, 41) establishing that he was qualified to be Chief Building Inspector. Mr. Bryant had the required certifications, in fact more certifications and for longer periods of time than Mr. Rehklau, along with years of supervisory experience whereas Mr. Rehklau was supervised and being trained by Mr. Bryant to become a supervisor.

97.

Mr. Proctor realleges that he applied and interviewed for the position of Chief Building Inspector (CCI) when it was posted for the first time on April 16, 2021 after he and Mr. Bryant had previously filed their EEOC Charges in February 2021 regarding their not being promoted into the position of Chief Building Inspector which had been given to by Mr. Johnson to Mr. Rehklau. (¶¶1, 8-13, 60-66).

98.

Mr. Proctor realleges that Mr. Rehklau was hired to be permanent in the position of Chief Building Inspector (CCI) instead of him on December 14, 2021. (¶¶ 67, 68).

99.

Mr. Proctor realleges (¶¶1,2, 8-15, 24-73, 75, 76) establishing that Mr. Rehklau was illegally hired over him because of Mr. Rehklau's younger age.

100.

Mr. Rehklau is sufficiently younger than Mr. Proctor to create an inference of age discrimination. (¶¶ 36, 45).

101.

Mr. Johnson told Mr. Bryant that he had specifically selected Mr. Rehklau because he was younger than Mr. Bryant, Mr. Pace confirmed that he had merely gone along with Mr. Johnson's recommendation, which in any event is confirmed by City of Atlanta's own website which states that "Tim was selected by the previous Chief to assume the role as Interim Chief, upon his retirement." Thus, City of Atlanta's own website confirms that Steve Johnson effectively made the decision, which Mr. Pace and City of Atlanta went along with, regarding the selection of Mr. Rehklau. (¶¶48-50).

102.

Mr. Proctor realleges (¶¶1,9, 11, 8-15, 24-73, 75, 76) establishing that Mr. Rehklau was illegally hired as Chief Building Inspector instead of Mr. Proctor because of Mr. Rehklau's younger age.

103.

Mr. Rehklau is sufficiently younger than Mr. Proctor to create an inference of age discrimination. (¶¶ 36, 45).

104.

In any event, Mr. Johnson's statements amount to direct evidence of age discrimination. Accordingly, Mr. Proctor realleges (¶¶44, 46,48, 50) establishing that Steve Johnson, whose recommendation Gregory Pace and City of Atlanta followed regarding the selection of his successor as Chief Building Inspector, specifically stated regarding the selection of Mr. Rehklau over Mr. Bryant or Mr. Proctor, that the decision was made because Mr. Rehklau was "younger" and "had a longer career ahead of him". Mr. Johnson told Eric Woods, who was 70, that they had selected someone "younger" for the Chief Building Inspector position. (¶47) Mr. Johnson's direct statements of ageist bias regarding the selection of Mr. Rehklau in November 2020 were consistent with his repeated prior statements in staff and training meetings that "old guys would be gone" and that the City was looking for "young people" to fill positions. ((¶¶53, 69). In any event, Mr. Johnson's ageist statements directly stating the intent to hire someone "younger" with a "longer career ahead of him" with specific reference to the Chief Building Inspector position establishes the causal connection between Mr. Rehklau's younger age and his selection to be hired as and to permanently succeed Mr. Johnson as Chief Building Inspector.

105.

Mr. Pace confirmed that he had merely gone along with Mr. Johnson's recommendation, which in any event is confirmed by City of Atlanta's own website which states that "Tim was selected by the previous Chief to assume the role as Interim Chief, upon his retirement." Thus, City of Atlanta's own website confirms that Steve Johnson effectively made the decision, which Mr. Pace and City of Atlanta went along with, regarding the promotion of Mr. Rehklau. (¶¶48-50).

106.

Mr. Johnson's ageist intent can be imputed to City of Atlanta because Mr. Pace simply rubber-stamped Mr. Johnson's recommendation, which is borne out by City of Atlanta's public statements on its own website. (¶¶48-50).

107.

Mr. Proctor realleges (¶¶ 71-72) establishing that after its investigation the EEOC concluded that City of Atlanta had violated the ADEA regarding hiring Mr. Rehklau over Mr. Proctor, and that City of Atlanta's articulation for doing so was pretextual.

108.

City of Atlanta's decision to hire Mr. Rehklau instead of Mr. Proctor was based on age and violated the ADEA. (¶¶ 1,2, 8-15, 27-73, 75, 76). Any reasons articulated by City of Atlanta for doing so are pretextual, as so found by the EEOC.

109.

Mr. Proctor realleges (¶¶ 73-74) regarding damages he has suffered.

110.

Mr. Proctor realleges (¶¶ 75-76) establishing that City of Atlanta committed a willful violation of the ADEA entitling Mr. Proctor to liquidated damages.

WHEREFORE, Plaintiff seeks the following relief:

1. Compensatory make- whole relief for Plaintiff's economic damages, in amounts to be determined at trial, including but not limited to back pay, front pay in lieu of reinstatement as set forth separately in item No. 2 below, and any other affirmative relief necessary to eradicate the effects of City of Atlanta's unlawful employment practice;
2. Front pay in lieu of reinstatement;
3. Liquidated damages for a willful violation of the ADEA;

4. Attorneys' fees, expert witness fees, costs and disbursements of this action;
5. Appropriate injunctive relief, including but not limited to a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of age against individuals 40 years of age and older;
6. Appropriate declaratory relief;
7. Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for all employees in the protected age group and/or who engage in a protected activity and which eradicate the effects of its past and present unlawful employment practices;
8. Interest from November 19, 2020, until judgment is entered and post-judgment interest;
9. Such other and further relief as this Court deems appropriate; and
10. Plaintiff demands TRIAL BY JURY.

This 11th day of April 2023.

Respectfully submitted,
**/s/**Jean Simonoff Marx
Jean Simonoff Marx
Georgia Bar No. 465276
E-mail: jeannie.marx@marxlawgroup.com
Robert N. Marx
Georgia Bar Number 475280
E-mail: lawyers@marxlawgroup.com
Marx & Marx, L.L.C.
Attorneys for Plaintiff
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338
Telephone: (404) 261-9559